IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN LIVINGSTON, | ) | CASE NO. 1:18 CV 0482 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT &** |
| | ) | **RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Dawn Livingston, for disability insurance benefits. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders, the parties have briefed their positions[6] and filed supplemental charts[7] and the fact sheet.[8] They have participated in oral argument.[9]

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated March 1, 2018.
[2] ECF No. 12.
[3] ECF No. 13.
[4] ECF No. 5.
[5] ECF No. 14.
[6] ECF No. 18 (Commissioner's brief); ECF Nos. 15, 19 (Livingston's briefs).
[7] ECF No. 18, Attachment 1 (Commissioner's charts); ECF No. 15, Attachment 1 (Livingston's charts).
[8] ECF No. 15, Attachment 2.
[9] ECF No. 21.

# Facts

**A.   Background facts and decision of the Administrative Law Judge ("ALJ")**

Livingston, who was 48 years old at the time of the hearing,[10] graduated college with a bachelor's degree in English.[11] Her past relevant work experience includes work as a file clerk and researcher.[12]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Livingston had the following severe impairments: asthma; depressive disorder; anxiety disorder; personality disorders; and autism spectrum disorder.[13]

The ALJ determined Livingston had the residual functional capacity ("RFC") for medium work as defined in the regulations, with additional limitations.[14] Given that RFC, the ALJ found Livingston capable of her past relevant work as a file clerk.[15] In the alternative, the ALJ determined that a significant number of jobs existed nationally that Livingston could perform.[16] The ALJ, therefore, found Livingston not under a disability.[17]

---

[10] ECF No. 15, Attachment 2 (fact sheet).
[11] *Id.*
[12] *Id.*
[13] ECF No. 13, Transcript ("Tr.") at 13.
[14] *Id.* at 17.
[15] *Id.* at 23.
[16] *Id.* at 24.
[17] *Id.* at 25.

**B.     Issues on judicial review**

Livingston asks for reversal of the Commissioner's decision, claiming it does not have the support of substantial evidence in the administrative record.  Specifically, Livingston presents the following issues for judicial review:

- Whether the ALJ erred in finding Livingston did not meet or equal Listing 12.10.

- Whether the ALJ erred in rejecting the medical opinions of treating psychiatrist Dr. Maksimowski.

- Whether the ALJ erred in misstating consulting examiner Dr. Hill's opinion.

- Whether the ALJ erred in his analysis of Livingston's activities of daily living ("ADLs").

- Whether the ALJ erred in finding that Livingston's carpal tunnel syndrome ("CTS") was not a severe impairment.

I will address each of these arguments below.   For the reasons set forth in this report and recommendation, I recommend that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.     Applicable legal principles**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial

3

> evidence, shall be conclusive. . . ." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Severity of impairments*

At step two of the five-part sequential disability analysis, a claimant must prove she suffers from a severe impairment. "A severe impairment is one [that] significantly limits . . . physical or mental ability to do basic work activities."[21] Where the ALJ utilizes the

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citations omitted).
[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *1 (S.D. Ohio Feb. 12, 2008).
[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).
[21] *Van Der Mass v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 525 (6th Cir. 2006) (quoting

proper step two standard, considers the relevant evidence, and "draws conclusions supported by the analysis of that evidence," the ALJ's step two findings will be upheld.[22]

### *3.    Meeting a listing at step three*

If a claimant has a severe impairment or combination of impairments that meets one of the listings in Appendix 1 to Subpart P of the regulations, the claimant is disabled.[23] Because the listings describe impairments that the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience,"[24] the Commissioner will deem a claimant who meets or equals the requirements of a listed impairment conclusively disabled.[25] Each listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing,"[26] and the claimant bears the burden of proving[27] that she has satisfied all of the criteria of a listing in order to meet the listing.[28]

Even if a claimant cannot demonstrate disability by meeting the listing, she may be disabled if her impairment is the medical equivalent of a listing.[29] Medical equivalence

---

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Circ. 2001) (internal quotations omitted))
[22] *Van Der Mass*, 198 F. App'x at 525.
[23] *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Circ. 2009); *Cunningham v. Comm'r of Soc. Sec.*, No. 5:10CV1001, 2012 WL 1035873, at *2 (N.D. Ohio March 27, 2012) (citing *Rabbers*, 582 F.3d at 652).
[24] 20 C.F.R. § 404.1525(a).
[25] *Rabbers*, 582 F.3d at 653.
[26] 20 C.F.R. § 404.1525(c)(3).
[27] *Rabbers*, 582 F.3d at 653.
[28] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).
[29] 20 C.F.R. § 404.1520(a)(4)(iii).

means that the impairment is "at least as equal in severity and duration to the criteria of any listed impairment."[30] A claimant seeking to establish that an impairment is equivalent to a listing must present "medical findings" that show her impairment is "equal in severity to all the criteria for the one most similar listed impairment."[31]

While the Sixth Circuit "does not require a heightened articulation standard" by the ALJ at step three,[32] "the ALJ must make it sufficiently clear in his or her decision the reasons for the [listing] determination in order for the Court to conduct a meaningful review."[33]

### *4. Treating physician and good reasons requirement*

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[34] emphasized that the regulations require two distinct analyses in evaluating the opinions of treating sources.[35] The *Gayheart* decision directed that the ALJ must first determine if the opinion must receive controlling weight as well-supported by clinical and laboratory techniques and as not inconsistent with other evidence in the administrative record.[36] If the ALJ decides not to give the opinion controlling weight, then a rebuttable presumption exists that

---

[30] 20 C.F.R. § 404.1526(a).
[31] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).
[32] *Marok v. Astrue*, No. 5:08CV 1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (citing *Bledsoe v. Barnhart,* No. 04-4531, 2006 WL 229795, at *3 (6th Cir. Jan. 31, 2006)).
[33] *Eiland v. Astrue*, No. 1:10CV2436, 2012 WL 359677, at *9 (N.D. Ohio Feb. 2, 2012) (citing *Marok*, 2010 WL 2294056, at *3).
[34] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[35] *Id.* at 375-76.
[36] *Id.* at 376.

the treating physician's opinion should receive great deference.[37] This presumption may be rebutted by application of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[38] The Court cautioned against collapsing these two distinct analyses into one.[39]

Despite the seemingly clear mandate of *Gayheart*, the Sixth Circuit in later decisions has adopted an approach that permits these two separate analyses to be merged into one so long as the ALJ states "good reasons" for the weight assigned, applying the regulatory factors governing each analytical step.[40]

An ALJ cannot avoid reversal by merely citing exhibits in the record that might support his findings without discussing the content of those exhibits and explaining how that content provides support.[41] Nor can counsel for the Commissioner save a decision from reversal by citing to evidence in the record not cited and adequately discussed by the ALJ.[42] It is for the ALJ, not the court or Commissioner's counsel, to "build a logical bridge from the evidence to the conclusion."[43] "Put simply, . . . there must be some effort

---

[37] *Rogers*, 486 F.3d at 242.
[38] *Gayheart*, 710 F.3d at 376.
[39] *Id.*
[40] *E.g., Biestek v. Comm. of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).
[41] *Smith v. Comm'r of Soc. Sec.*, No. 5:13 CV 870, 2104 WL 1944247, at *7 (N.D. Ohio May 14, 2014).
[42] *Sharp v. Comm'r of Soc. Sec.*, No. 1:14-cv-523, 2015 WL 3545251, at *8 (S.D. Ohio June 4, 2015) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted by* 2015 WL 3952331 (S.D. Ohio June 29, 2015).
[43] *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, at *8 (S.D. Ohio March 5, 2014).

. . . to explain why it is the treating physician's conclusion that gets the short end of the stick."[44]

## B. Application of legal principles

### 1. *Severity of CTS*

At step two, the ALJ found the record failed to establish Livingston's CTS as a medically determinable impairment.[45] After quoting extensively from 20 C.F.R. § 404.1529(a) and emphasizing that the record must contain "medical signs and laboratory findings which show that [a claimant] ha[s] a medical impairment[]," the ALJ determined that the record before him lacked such signs and laboratory tests for Livingston's CTS.[46]

Livingston argues that the record shows a diagnosis of CTS and a prescription for wearing splints; therefore, the ALJ erred in finding Livingston's CTS not severe.[47] Livingston points to three references to Livingston's CTS in the record.[48] The first, in January 2015, is when Livingston was first diagnosed.[49] There, Dr. White wrote in her treatment notes that Livingston "has splints already at home and [is] declining further workup or intervention."[50] Dr. White prescribed continued use of the splints, with no further work up at this time.[51] In 2016, when Livingston complained of more frequent

---

[44] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).
[45] Tr. at 14.
[46] *Id.*
[47] ECF No. 15 at 24; ECF No. 19 at 7.
[48] ECF No. 19 at 7.
[49] Tr. at 458-61.
[50] *Id.* at 459.
[51] *Id.* at 460.

8

numbness, Mr. Nathan. Pham noted Livingston was not using her splints consistently.[52] Mr. Pham instructed Livingston to use her splints every night.[53] Shortly thereafter, Dr. Crowe reassured Livingston that the numbness was not the result of diabetes mellitus neuropathy and encouraged Livingston to use her splints regularly.[54]

These few medical records reflect a diagnosis and treatment, but do not evidence in any way that Livingston's CTS significantly limited her ability to perform basic work activities. The ALJ utilized the proper step two standard and drew conclusions supported by the evidence. Therefore, I cannot say the ALJ erred in his step two findings. But any error in this case would be harmless, as the ALJ found Livingston had several severe impairments, proceeded to the other steps in the five-step sequential disability analysis, and was required to consider all of Livingston's impairments, both severe and non-severe, in formulating the RFC.

## 2. *Listing 12.10*

Livingston asserts the ALJ erred in finding she did not meet or equal Listing 12.10, autism spectrum disorder.[55] Listing 12.10 requires:

---

[52] *Id.* at 906.
[53] *Id.* at 909.
[54] *Id.* at 912.
[55] ECF No. 15 at 16-19.

9

    A.    Medical documentation of <u>both</u> of the following:

        1. Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and

        2. Significantly restricted, repetitive patterns of behavior, interests, or activities.

AND

    B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

        1. Understand, remember, or apply information (see 12.00E1).

        2. Interact with others (see 12.00E2).

        3. Concentrate, persist, or maintain pace (see 12.00E3).

        4. Adapt or manage oneself (see 12.00E4).[56]

The ALJ concluded that the record lacked evidence showing Livingston met or equaled the listing.[57] And the ALJ at length discussed the "paragraph B" criteria in his opinion, which also is the same for listings 12.04, 12.06, and 12.08 – all of which the ALJ identified and considered at step three.[58] While Livingston argues treating source Dr. Maksimowski's opinions show she met listing 12.10,[59] Livingston mischaracterizes his opinions.[60] Dr. Maksimowski's opinions are silent as to whether Livingston met or

---

[56] https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_10 (last visited Dec. 14, 2018).
[57] Tr. at 15.
[58] *Id.* at 15-16.
[59] ECF No. 15 at 17.
[60] Tr. at 835-37, 926-28.

equaled any listing, let alone listing 12.10.[61] And in fact, Dr. Maksimowski's most recent opinion shows Livingston reported an autism diagnosis to him.[62]

Livingston bears the burden of proof at step three.[63] The ALJ found Livingston failed to show her impairment met or equaled all the criteria set forth in Listing 12.10.[64] He properly analyzed the evidence and articulated his conclusions.[65] Livingston points to no evidence the ALJ ignored or overlooked.[66] It is not for the Court to reweigh the evidence. Therefore, the ALJ's step three finding must be affirmed.

### 3. *Weight assigned to treating source*

Livingston faults the ALJ for assigning little weight to the opinions of Dr. Maksimowski.[67] The ALJ thoroughly explained the reasons for the weight assigned:

> The undersigned gives little weight to this assessment because it is not consistent with the medical record. In spite of his status as the claimant's treating physician, the undersigned cannot assign controlling weight to his opinions because they are not entirely consistent with the evidence of record, including the claimant's statements regarding her activities of daily living. Although he found limitations attributable to the claimant's condition, his assessment of functional limitations lacks the specificity that would otherwise make it more persuasive. In fact, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion and does not provide a function-by-function assessment of the claimant's limitations. The

---

[61] *Id.*
[62] *Id.* at 928.
[63] *Rabbers*, 582 F.3d at 653.
[64] Tr. at 15.
[65] *Id.* at 15-17.
[66] ECF No. 15 at 16-19; ECF No. 19 at 1-2.
[67] ECF No. 15 at 19-20.

> claimant ask[s] that the undersigned accept the functional capacity assessment at face value, without regard to the six regulatory factors for weighing the opinion under the treating physician rule. This appears to be a variation on the argument that disability can be established even if not "by reason of" a medically determinable impairment(s). The undersigned is asked to simply presume that any and all restrictions assigned by the source are consistent with reasonable medical expectations – even if they are not reasonable or expected. But, in the absence of an explanation by the source as to what the medical findings actually signify in terms of expectations, the supplied opinion does not comport with the requirements of the Regulation, and thus its value is correspondingly diminished.[68]

This unified statement of good reasons for the weight assigned does not cite to specific evidence the ALJ determined to be inconsistent with Dr. Maksimowski's opinions. But earlier in his decision, the ALJ cites several exhibits – including Dr. Maksimowski's own treatment notes – that he found inconsistent with the severity of the limitations set forth in Dr. Maksimowski's opinions.[69] Again, it is not for the Court to reweigh the evidence. The ALJ recognized Dr. Maksimowski as a treating source, analyzed and discussed his opinions, and provided good reasons for the weight assigned. Therefore, the ALJ's determination regarding Dr. Maksimowski's opinions must be upheld.

*4.    Articulation regarding consulting examiner's opinion*

Livingston maintains that the ALJ misstated consulting examiner Dr. Amber Hill's opinion.[70] Livingston agrees with the ALJ's decision to give Dr. Hill's opinion great

---

[68] Tr. at 22.
[69] *Id.* at 19.
[70] ECF No. 15 at 20-21.

weight but argues that giving Dr. Hill's opinion great weight supports a disability finding.[71]

Livingston reads Dr. Hill's decision too broadly. Dr. Hill noted that Livingston "may have difficulty in maintaining" attention, concentration, and pace because of her "excessive anxiety and worry and depressive symptomology."[72] She also stated that Livingston "may have limitation in her ability to respond appropriately to work pressures in a work setting."[73] But the ALJ acknowledged Dr. Hill's statement about Livingston's ability to respond to work pressures and highlighted the evidence in Dr. Hill's opinion that supported his conclusions.[74] While Livingston disagrees with the ALJ's reading of Dr. Hill's opinion, I cannot say that the ALJ's interpretation was erroneous or unfounded. Nor has Livingston shown how the ALJ's RFC findings limiting Livingston to "simple and occasional detailed tasks in a setting with occasional changes that can be easily explained" is inconsistent with Dr. Hill's opinion.[75] The ALJ properly weighed and analyzed Dr. Hill's opinion and explained his conclusions. There is no error.

5. *Evaluation of ADLs*

Finally, Livingston argues the ALJ erred in his analysis of her ADLs.[76] The bulk of the ALJ's analysis of Livingston's ADLs in in his discussion of the paragraph B criteria

---

[71] *Id.* at 21.
[72] Tr. at 849.
[73] *Id.*
[74] *Id.* at 21.
[75] *Id.* at 17.
[76] ECF No. 15 at 20-21.

13

of listings 12.04, 12.06, 12.08, and 12.10 at step three.[77] Contrary to Livingston's assertions, the ALJ acknowledged that Livingston struggled with certain aspects of daily living.[78] But the ALJ found that Livingston's ADLs showed she was not as limited as she alleged.[79] The ALJ acknowledged and weighed the contradictory evidence and resolved any inconsistencies. At bottom, Livingston asks the Court to reweigh the evidence, which it may not do. The ALJ appropriately considered Livingston's ADLs.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Livingston had no disability. Accordingly, I recommend that the decision of the Commissioner denying Livingston disability insurance benefits be affirmed.

IT IS SO RECOMMENDED.

Dated: December 21, 2018                     s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[77] Tr. at 15-17.
[78] *Id.*
[79] *Id.* at 15-17, 20.

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[80]

---

[80] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).